**Slip Op. 11-34**

**UNITED STATES COURT OF INTERNATIONAL TRADE**

| HYOSUNG CORPORATION, Plaintiff, v. UNITED STATES, Defendant, and NUCOR CORPORATION, Defendant-Intervenor. | Before: Richard W. Goldberg, Senior Judge Court No. 10-00114 PUBLIC VERSION |
|---|---|

**OPINION**

[Plaintiff's Motion for Judgment on the Agency Record is denied and the final results of the administrative review are sustained.]

Dated: March 31, 2011

Troutman Sanders LLP (Don B. Cameron, Julie C. Mendoza, R. Will Planert, Brady W. Mills, and Mary S. Hodgins), for the Plaintiff.

Tony West, Assistant Attorney General; Jeanne E. Davidson, Director; Patricia M. McCarthy, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (L. Misha Preheim); Office of the Chief Counsel for Import Administration, U.S. Department of Commerce (Aaron Kleiner), Of Counsel, for the Defendant.

Wiley Rein LLP (Alan H. Price, Timothy C. Brightbill, Christopher B. Weld, and Tessa V. Capeloto), for the Defendant-Intervenor.

**Goldberg, Senior Judge:** Hyosung Corporation ("Hyosung") contests the International Trade Administration of the U.S. Department of Commerce's ("Commerce") final results of the antidumping duty administrative review covering certain cut-to-length carbon-quality steel plate ("CTLP") from Korea. See Certain Cut-to-Length Carbon-Quality Steel Plate from the Republic

of Korea: Final Results of Antidumping Duty Administrative Review and Rescission of Administrative Review in Part, 75 Fed. Reg. 10,207 (Dep't Commerce Mar. 5, 2010) ("Final Results").

**Background**

In February 2009, Commerce published a notice of opportunity to request an administrative review of CTLP from Korea for the 2008-2009 period. Notice of Opportunity to Request Administrative Review, 74 Fed. Reg. 6,013 (Dep't Commerce Feb. 4, 2009). Nucor Corporation, a U.S. producer of CTLP, requested review of Hyosung, Daewoo International Corporation ("Daewoo"), Hyundai Mipo Dockyard Company Limited ("Hyundai"), and JeongWoo Industrial Machine Company Limited ("JeongWoo"). Dongkuk Steel Mill Company Limited ("DSM"), a Korean producer of CTLP, requested review of itself.

In March 2009, Commerce initiated a review of Hyosung, DSM, Daewoo, Hyundai, and JeongWoo. Initiation of Antidumping and Countervailing Duty Administrative Reviews and Requests for Revocation in Part, 74 Fed. Reg. 12,310 (Dep't Commerce Mar. 24, 2009) ("Initiation Notice"). The Initiation Notice stated that companies that did not have exports, sales, or entries of the subject merchandise during the period of review ("POR") could submit a no-shipments letter to Commerce within thirty days of publication of the notice. Hyosung did not submit a no-shipments letter. The Initiation Notice also stated that Commerce might limit the number of respondents for individual examination based upon import data from U.S. Customs and Border Protection ("CBP").

Accordingly, Commerce requested from CBP a report showing entries of CTLP during the POR. The CBP data revealed that DSM made [[ ]] of CTLP and that

Hyosung and the other respondents [[ ]]. See Mem. to the File: CBP Data, A-580-836, AR 2/1/2008-1/31/2009 (Apr. 1, 2009), Admin. R. Conf. Doc. 1. On March 31, 2009, Commerce informed the parties that it intended to select a respondent for individual examination based upon the CBP data and placed the data on the record for comment. See, e.g., Letter to Law Firm of Kelly Drye and Warren Regarding Respondent Selection, A-580-836, AR 2/1/2008-1/31/2009 (Mar. 31, 2009), Admin. R. Pub. Doc. 10. In response, DSM withdrew its request for review of itself. Nonetheless, on April 21, 2009, Commerce issued a memorandum informing parties that DSM had been selected for examination. See Respondent Selection Mem., A-580-836, AR 2/1/2008-1/31/2009 (Apr. 21, 2009), Admin. R. Conf. Doc. 2 at 4. Commerce later rescinded its review of DSM. Notice of Rescission of Administrative Review, 74 Fed. Reg. 27,015 (Dep't Commerce June 5, 2009).

In May 2009, Commerce informed respondents[1] that it would select a respondent for individual examination based on quantity-and-value ("Q&V") questionnaires. See Mem. Regarding Issuance of Quantity-and-Value Questionnaires, A-580-836, AR 2/1/2008-1/31/2009 (May 7, 2009), Admin. R. Pub. Doc. 30 at 1. Commerce transmitted Q&V questionnaires via Federal Express ("FedEx") and facsimile to Hyosung and placed the related documentation on the record. See Mem. Regarding Release of Quantity-and-Value Questionnaire, A-580-836, AR 2/1/2008-1/31/2009 (May 12, 2009), Admin. R. Pub. Doc. 32. The questionnaire contained instructions regarding where to submit the filing, the number of copies to submit, and the manner in which to submit the filing.

---

[1] Hyosung, Hyundai, Daewoo, and JeongWoo

Responses were due May 18, 2009, and Commerce warned that untimely responses would not be considered in the review. Commerce did not receive a timely response from Hyosung.

In September 2009, Commerce published the preliminary results of the review, applying an adverse facts available ("AFA") rate of 32.70 percent to Hyosung. Certain Cut-to-Length Carbon-Quality Steel Plate from the Republic of Korea, 74 Fed. Reg. 48,716 (Dep't Commerce Sept. 24, 2009) ("Preliminary Results"). Commerce explained that it applied an AFA rate because of Hyosung's lack of response. The 32.70 percent AFA rate was the highest product-specific margin calculated in the 2006-2007 administrative review of CTLP from Korea. See Certain Cut-to-Length Carbon-Quality Steel Plate Products From the Republic of Korea: Preliminary Results of Antidumping Duty Administrative Review and Intent To Rescind Administrative Review in Part, 72 Fed. Reg. 65,701 (Dep't Commerce Nov. 23, 2007), unchanged in final results, Certain Cut-to-Length Carbon-Quality Steel Plate Products From the Republic of Korea: Final Results of Antidumping Duty Administrative Review and Rescission of Administrative Review in Part, 73 Fed. Reg. 15,132 (Dep't Commerce Mar. 21, 2008). Commerce corroborated the rate using transaction-specific margins calculated for a cooperative respondent in the 2007-2008 administrative review. See Mem. Regarding Placement of Dongkuk Steel's 2007-08 Data on the Admin. R., A-580-836, AR 2/1/2008-1/31/2009 (Sept. 18, 2009), Admin. R. Conf. Doc. 4.

On October 1, 2009, one week after publication of the Preliminary Results, Hyosung responded to the Q&V questionnaire via facsimile declaring that it [[ ]] during the POR. The questionnaire was dated May 26, 2009, the date on which Hyosung claims it

initially transmitted that response by facsimile. Commerce did not accept the response because it was untimely and failed to satisfy a number of the regulatory requirements.

In March 2010, Commerce published the Final Results, maintaining the AFA rate for Hyosung, as set forth in the Preliminary Results. Commerce explained that it does not rescind reviews on the basis of CBP data alone. Commerce further reasoned that because Hyosung's response to the Q&V questionnaire was neither timely nor filed in accordance with Commerce's regulations, it was not considered in determining the antidumping rate. See Issues & Decision Mem., A-580-836, AR 2/1/2008-1/31/2009 (Mar. 1, 2010) Admin. R. Pub. Doc. 65 at 8. ("I&D Memo").

**Jurisdiction and Standard of Review**

This Court has jurisdiction pursuant to section 201 of the Customs Court Act of 1980, 28 U.S.C. § 1581(c) (2006).

This Court must "uphold Commerce's determination unless it is 'unsupported by substantial evidence on the record, or otherwise not in accordance with law.'" Micron Technology, Inc. v. United States, 117 F.3d 1386, 1393 (Fed. Cir. 1997) (quoting 19 U.S.C. § 1516a(b)(1)(B)(i) (1994)). "Substantial evidence" means "more than a mere scintilla" and has been characterized as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938) (citations omitted). When reviewing agency determinations, findings, or conclusions for substantial evidence, this Court determines whether the agency action is reasonable in light of the entire record. See Nippon Steel Corp. v. United States, 458 F.3d 1345, 1350-51 (Fed. Cir. 2006).

## Discussion

Hyosung challenges: (A) Commerce's rejection of its tardy response to the Q&V questionnaire; (B) its application of AFA; and (C) the AFA rate assigned as unsupported by substantial evidence and not in accordance with law. The Court addresses each argument in turn and, for the reasons below, Hyosung's arguments fail and its motion for judgment on the agency record is denied.

### A. Commerce's Determination Not to Accept Hyosung's Untimely and Improperly Filed Questionnaire Response Is Supported by Substantial Evidence and Otherwise in Accordance with Law

It is clear that "Commerce has broad discretion to establish its own rules governing administrative procedures, including the establishment and enforcement of time limits." Yantai Timken Co. v. United States, 31 CIT 1741, 1755, 521 F. Supp. 2d 1356, 1370-71 (2007) (quoting Reiner Brach GmbH & Co. v. United States, 26 CIT 549, 559, 206 F. Supp. 2d 1323, 1334 (2002)), aff'd, 300 Fed. Appx. 934 (Fed. Cir. 2008). Commerce's policy of setting time limits is both reasonable and necessary for it to complete its work. Id.

Hyosung claims that Commerce's rejection of Hyosung's untimely and improperly filed response was unreasonable and hence unsupported by substantial evidence. In support, Hyosung argues that it was not familiar with Commerce's procedures, was not represented by counsel, Commerce did not follow-up with Hyosung regarding its failure to respond, and Hyosung made repeated, good-faith attempts to cooperate. Hyosung's arguments are unpersuasive.

Commerce reasonably determined that Hyosung's untimely submission failed to satisfy a number of Commerce's regulatory requirements. Hyosung submitted its response on October 1,

2009, "more than four months after the May 18, 2009 deadline, more than two months after the regulatory deadline (July 18, 2009) for respondents to submit new factual information in an administrative review for purposes of issuing the final results in accordance with 19 C.F.R. § 351.301(b)(2), and a week after the publication of the Preliminary Results." See I&D Memo at 8. It is correct that Commerce may, for good cause, extend the time limit established for submission of the requested information. See 19 C.F.R. § 351.302(b). However, in order for Commerce to grant an extension of time, the party requesting an extension must do so in writing before the applicable time limit expires, including reasons for its request. See 19 C.F.R. § 351.302(c). Hyosung failed to request an extension.

Even if Hyosung initially transmitted its response on May 26, 2009, as it contends, that submission was past the deadline, and Commerce had discretion to reject it then because Commerce will not consider or retain in the official record of the proceeding any untimely filed information. See 19 C.F.R. § 351.302(d)(1)(i). Instead, Commerce will return untimely information. See 19 C.F.R. § 351.302(d)(2). Commerce rejects untimely information because, as Commerce explained, "[a]llowing parties to submit responses to [Commerce's] requests for information at whatever time is most convenient for [respondents] would amount to relinquishing [Commerce's] authority to establish due dates for submissions and it would thus impair [Commerce's] ability to satisfy the statutory timeframe in which to complete an administrative review." I&D Memo at 9. Hyosung also claims, without supporting legal authority, that Commerce should have followed-up with Hyosung regarding its failure to respond on time. However, Commerce is not obligated to do so.

Furthermore, once Hyosung finally submitted its response to the questionnaire, it contained a number of deficiencies.[2] Hyosung asserts that Commerce was required to notify Hyosung of any deficiencies in its submission relying on section 782(d) of the Tariff Act of 1930, 19 U.S.C. § 1677m(d) (2006).[3] However, the statute provides:

> If the administering authority . . . determines that a response to a request for information under this title does not comply with the request, the administering authority . . . shall promptly inform the person submitting the response of the nature of the deficiency and shall, **to the extent practicable**, provide that person with an opportunity to remedy or explain the deficiency **in light of the time limits established** for the completion of investigations or reviews . . . .

Id. (emphases added). Moreover, if further information is submitted in response to a deficiency and that response is not submitted within the applicable time limits, the administering authority may disregard all or part of the original and subsequent responses. 19 U.S.C. § 1677m(d)(2). Because Hyosung did not request an extension, and its response was not submitted within the applicable time limit, it was reasonable for Commerce to reject Hyosung's response and not afford Hyosung an opportunity to remedy the deficiency. In other words, given the deadline established and the tardiness of Hyosung's submission, it was reasonable for Commerce to conclude that it was not practicable to permit Hyosung to submit corrected information.[4]

---

[2] For example, Hyosung failed to submit the response to Commerce's physical address, as required by 19 C.F.R. § 351.303(b). It failed to submit the required number of copies and serve all interested parties with copies, as required by 19 C.F.R. § 351.303(c)(1) and § 351.303(f). It failed to format properly its submission, as required by 19 C.F.R. § 351.303(d). It failed to translate documents into English, as required by 19 C.F.R. § 351.303(e), and it failed to include the required certification of accuracy, as required by 19 C.F.R. § 351.303(g), among various other deficiencies.

[3] Further citations to the Tariff Act of 1930 are to the relevant portions of Title 19 of the U.S. Code, 2006 edition.

[4] 19 U.S.C. § 1677m(e) provides that "the administering authority and the Commission shall not decline to

(footnote continued)

Thus, Commerce's determination not to accept Hyosung's untimely and improperly filed Q&V questionnaire response is supported by substantial evidence and otherwise in accordance with law.

**B. Commerce's Determination to Assign Hyosung a Dumping Rate Based on Adverse Facts Available Is Supported by Substantial Evidence and Otherwise in Accordance with Law**

During an antidumping review, Commerce may rely upon facts available if necessary information is not available on the record or an interested party or any other person fails to provide such information by the deadlines for submission of the information or in the form and manner requested. 19 U.S.C. § 1677e(a). Furthermore, when "an interested party has failed to cooperate by not acting to the best of its ability to comply with a request for information from the administering authority . . . the administering authority . . . may use an inference that is adverse to the interests of that party in selecting from among the facts otherwise available." 19 U.S.C. § 1677e(b).

Hyosung argues that it was irrational and unlawful for Commerce to continue its review of Hyosung given the record evidence [[ ]] and Hyosung's eventual response [[ ]]. Hyosung further contends that Commerce's application of AFA was irrational and unlawful because Hyosung made repeated,

---

consider information that is submitted by an interested party and is necessary to the determination but does not meet all the applicable requirements established by the administering authority or the Commission, if
(1) the information is submitted by the deadline established for its submission,
(2) the information can be verified,
(3) the information is not so incomplete that it cannot serve as a reliable basis for reaching the applicable determination,
(4) the interested party has demonstrated that it acted to the best of its ability in providing the information and meeting the requirements established by the administering authority or the Commission with respect to the information, and
(5) the information can be used without undue difficulties."
This section is inapplicable in this case as all of the conditions must be met in order for Commerce to be precluded from declining to consider information. The information Hyosung submitted does not satisfy all of the requisite conditions.

good-faith efforts to comply. These claims are meritless.

First, Commerce "**may** rescind an administrative review, in whole or only with respect to a particular exporter or producer, if [Commerce] concludes that, during the period covered by the review, there were no entries, exports, or sales of the subject merchandise . . . ." 19 C.F.R. § 351.213(d)(3) (emphasis added). Thus, Commerce is not obligated to rescind the review, but it **may** if it determines that a particular company did not have entries, exports, or sales.

Here, Commerce could not conclusively determine that Hyosung [[ ]] during the POR. Commerce did not receive a no-shipments letter from Hyosung within thirty days of publication of the Initiation Notice. Furthermore, as Commerce explained, CBP data alone is not a conclusive statement of whether a respondent had shipments because it does not capture all entries, such as those not made electronically. Thus, Commerce sent a Q&V questionnaire to Hyosung (and other respondents) requesting information on their entries, exports, or sales. It was incumbent on Hyosung to supply the requested information because it has the burden of evidentiary production, as it possesses the necessary information. See Zenith Electronics Corp. v. United States, 988 F.2d 1573, 1583 (Fed. Cir. 1993) (stating that the "burden of production should belong to the party in possession of the necessary information"). Nonetheless, Hyosung did not supply the requested information. Accordingly, pursuant to 19 U.S.C. § 1677e(a), Commerce proceeded with the review on the basis of facts available.

Furthermore, Commerce applied an adverse inference because Hyosung did not act to the best of its ability in complying. See 19 U.S.C. § 1677e(b). Hyosung had two opportunities to inform Commerce that it did not have shipments. However, Hyosung did not submit a no-shipments letter,

did not request an extension of time to respond to the Q&V questionnaire, did not contact Commerce for clarification of the questionnaire because of its alleged unfamiliarity with Commerce's procedures, and failed to respond to the Q&V questionnaire in a timely fashion. Thus, Commerce reasonably determined that Hyosung had failed to act to the best of its ability in complying with its request for information.

Therefore, Commerce's determination to assign Hyosung an AFA rate is supported by substantial evidence and otherwise in accordance with law.

**C. The AFA Rate Commerce Assigned Is Supported by Substantial Evidence and Otherwise in Accordance with Law**

Hyosung argues that the AFA rate assigned to it is not grounded in commercial reality, is punitive, and is unsupported by substantial evidence. This Court disagrees and finds that Commerce reasonably selected and corroborated the AFA rate it assigned to Hyosung.

As previously mentioned, during an antidumping review, when "an interested party has failed to cooperate by not acting to the best of its ability to comply with a request for information from the administering authority . . . the administering authority . . . may use an inference that is adverse to the interests of that party in selecting from among the facts otherwise available." 19 U.S.C. § 1677e(b). The antidumping duty rate under such circumstances, an AFA rate, may be based on information obtained from: "(1) the petition, (2) a final determination in the investigation under this title, (3) **any previous review** under section 751 [19 U.S.C. § 1675] or determination under section 753 [19 U.S.C. § 1675b], or (4) any other information placed on the record." Id. (emphasis added). In addition, Commerce's regulations provide that Commerce may rely upon information from a prior review as AFA. 19 C.F.R. § 351.308(c)(1).

Pursuant to its statutory and regulatory authority, Commerce selected the AFA rate it assigned to Hyosung based on information from a previous review. 19 U.S.C. § 1677e(b); 19 C.F.R. § 351.308(c)(1). Specifically, Commerce selected an AFA rate of 32.70 percent the highest product-specific antidumping rate calculated for a cooperative respondent in the 2006-2007 administrative review of CTLP from Korea.[5]

When Commerce "relies on secondary information rather than on information obtained in the course of an investigation or review," Commerce shall "corroborate that information from independent sources" reasonably at its disposal. 19 U.S.C. § 1677e(c). In accordance, Commerce corroborated the 32.70 percent AFA rate using transaction-specific margins drawn from a cooperative respondent in the 2007-2008 administrative review. See Mem. Regarding Placement of Dongkuk Steel's 2007-08 Data on the Admin. Record, A-580-836, AR 2/1/2008-1/31/2009 (Sept. 18, 2009), Admin. R. Conf. Doc. 4.

Hyosung's argument that the AFA rate is excessive and does not relate to commercial reality because it is higher than the rate of another company in a prior review is unpersuasive. "Commerce need not select, as the AFA rate, a rate that represents the typical dumping margin for the industry in question." KYD, Inc. v. United States, 607 F.3d 760, 765-66 (Fed. Cir. 2010) (rejecting an importer's claim that the AFA rate applied was neither reliable nor relevant because

---

[5] In the 2006 2007 POR, Commerce relied upon this rate as AFA for an uncooperative respondent, Tae Chang Steel. See Certain Cut to Length Carbon Quality Steel Plate Products From the Republic of Korea: Preliminary Results of Antidumping Duty Administrative Review and Intent To Rescind Administrative Review in Part, 72 Fed. Reg. 65,701 (Dep't Commerce Nov. 23, 2007), unchanged in final results, Certain Cut to Length Carbon Quality Steel Plate Products From the Republic of Korea: Final Results of Antidumping Duty Administrative Review and Rescission of Administrative Review in Part, 73 Fed. Reg. 15,132 (Dep't Commerce Mar. 21, 2008).

the rate was much higher than the dumping margin applied to other companies). As the Federal Circuit explained, "the fact that current dumping margins for other companies in the same industry are lower than the rate applied" to the respondent in question "does not invalidate Commerce's determination." Id. at 766.

In fact, when a respondent fails to cooperate, Commerce may draw an adverse inference and assign it the highest calculated rate. See id. at 765-66; see also Rhone Poulenc, Inc. v. United States, 899 F.2d 1185, 1190 (Fed. Cir. 1990). There is a "common sense inference that the highest prior margin is the most probative evidence of current margins because, if it were not so, the importer, knowing of the rule, would have produced *current* information showing the margin to be less." Rhone Poulenc, 899 F.2d at 1190. Therefore, "it is within Commerce's discretion to presume that the highest prior margin reflects the current margins." See Ta Chen Stainless Steel Pipe, Inc. v. United States, 298 F.3d 1330, 1339 (Fed. Cir. 2002) (citing Rhone Poulenc, 899 F.2d at 1190). Since Hyosung did not cooperate, Commerce acted within its discretion and assigned it the highest calculated rate from a previous review.

Hyosung argues that, in contrast to KYD where Commerce presumed that a prior dumping margin imposed on an exporter in an earlier review continues to be valid if the exporter fails to cooperate in a subsequent review, Hyosung never participated in a prior review and had never been assigned a dumping rate. According to Hyosung, these factual distinctions render KYD inapposite. However, the fact that Hyosung did not participate in a prior review, and thus never assigned a rate, does not make KYD inapplicable. Notably, in KYD, the court did not state that the highest calculated rate applicable must be the highest rate calculated for the particular respondent. "[A]n

uncooperative party may be assigned the 'highest verified margin' of the cooperating companies, even though it was 'highly likely that the real dumping margin [for the party] would be well under' the AFA rate." KYD, 607 F.3d at 766 (citing F.Lii de Cecco di Filippo Fara S. Martina S.p.A. v. United States, 216 F.3d 1027, 1029, 1033-34 (Fed. Cir. 2000)); see also, Shanghai Taoen Int'l Co. v. United States, 29 CIT 189, 195-99, 360 F. Supp. 2d 1339, 1345-48 (2005) (upholding a 223.01 percent AFA rate because there was no prior dumping margin for the company and it was the highest rate determined in the current or any previous segment of the proceeding and reflected recent commercial activity by a different exporter of the same goods from the same country). Thus, Commerce's selection of the highest margin of a cooperating company was appropriate.

Commerce reasonably corroborated that rate by using transaction-specific margins drawn from a cooperative respondent in the 2007-2008 administrative review. See KYD, 607 F.3d at 766 (expressly upholding the same corroboration methodology where an uncooperative company failed to provide Commerce with any sales data). Notably, the corroborating margins were both higher than and close to the 32.70 percent AFA rate applied to Hyosung. See id. (finding the AFA rate well grounded because the "transaction-specific margins for cooperative companies" were both higher than and close to the AFA rate applied, and therefore, Commerce had a sufficient basis for concluding that the AFA rate was reliable).

In sum, because there was no prior dumping margin for Hyosung, Commerce reasonably selected a product-specific dumping margin for a cooperative respondent during a recent review, and corroborated the rate using transaction-specific margins from the preceding administrative review. Therefore, the Court rejects Hyosung's claim that the margin does not relate to

commercial reality.[6] Also, despite Hyosung's contentions, the rate is not punitive because "the antidumping laws are remedial," and "an AFA dumping margin determined in accordance with the statutory requirements is not a punitive measure . . . ." Id. at 767-68 (citations omitted).

In light of the foregoing, Commerce's determination to assign Hyosung an AFA rate of 32.70 percent is supported by substantial evidence and otherwise in accordance with law.

## Conclusion

Commerce's rejection of Hyosung's untimely response, its application of AFA, and the AFA rate assigned are supported by substantial evidence and otherwise in accordance with law.

For the foregoing reasons, Hyosung's motion for judgment upon the agency record is denied and judgment is entered in favor of the United States.

/s/ Richard W. Goldberg
Richard W. Goldberg
Senior Judge

Dated: March 31, 2011

New York, New York

---

[6] Hyosung's reliance on Gallant Ocean Co., Ltd. v. United States, 602 F.3d 1319 (Fed. Cir. 2010) is misplaced. In Gallant Ocean, Commerce applied an AFA rate drawn from an antidumping petition that was approximately ten times higher than the average margins for cooperating respondents. Gallant Ocean, 602 F.3d at 1323 24. The Federal Circuit found that Commerce "incorrectly presumed that the adjusted petition rate was reliable in the face of much more reliable information" and that the "adjusted petition rate did not . . . represent commercial reality." Id. at 1323. The court noted that "[i]nstead of relying on the adjusted petition rate, Commerce should have relied on more reliable 'facts otherwise available' such as the representative dumping rates of similarly sized and similarly situated exporters in the original investigation and in the administrative review." Id. at 1324.

Here, Commerce did not rely on a petition rate, but rather, used a rate drawn from product specific sales data for a cooperative respondent in the 2006 2007 administrative review. Moreover, in Gallant Ocean, there was a significant discrepancy between the AFA rate assigned and the dumping margins determined for cooperative respondents during the same period of review. Id. at 1323 24. Here, since there were not any cooperative respondents in the 2008 09 POR, there is no indication that the AFA rate is unreflective of margins during the POR.

**UNITED STATES COURT OF INTERNATIONAL TRADE**

HYOSUNG CORPORATION,

Plaintiff,

v.

UNITED STATES,

Defendant,

and

NUCOR CORPORATION,

Defendant-Intervenor.

Before: Richard W. Goldberg,
Senior Judge
Court No. 10-00114

**JUDGMENT**

Upon consideration of Plaintiff's Motion for Judgment on the Agency Record and the memoranda and accompanying materials in support thereof, and the opposition and supporting materials thereto, and upon all the other papers and proceedings had herein, it is hereby

ORDERED that Plaintiff's motion be, and hereby is, denied; and it is further

ORDERED that judgment is hereby entered in favor of Defendant.

/s/ Richard W. Goldberg
Richard W. Goldberg
Senior Judge

Dated: March 31, 2011

New York, New York